# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TROY OF THE FAMILY CARSLAKE,** | CASE NO. 18-cv-06176-YGR |
| Plaintiff**,** | |
| vs. | **ORDER GRANTING MOTIONS TO DISMISS** |
| **DEPARTMENT OF CHILD SUPPORT SERVICES, ET AL.,** | Re: Dkt. Nos. 9, 11, 22 |
| Defendants**.** | |

On October 9, 2018, plaintiff Troy Carslake (named as Troy of the Family Carslake),

proceeding *pro se*, filed a complaint alleging thirteen causes of action in violation of 42 U.S.C.

§1983 ("Section 1983") against eight defendants—the County of Alameda (erroneously named as

the "Alameda County Department of Child Support Services) and Sheriff Gregory J. Ahern

(collectively, "County Defendants"); the California Department of Child Support Services

("DCSS") and David Kilgore, Director of DCSS (collectively, "DCSS Defendants"); the Alameda

County Superior Court, the Clerk of the Court, and Alameda County Superior Court Judges Mark

Kliszewski and Somnath Raj Chatterjee (collectively, "Judicial Defendants"). (Dkt. No. 1

("Compl.").) Plaintiff's allegations all appear to relate to his child support obligation and

defendants' actions and involvement in setting and enforcing that obligation. (*See id.*)

All defendants now move to dismiss all counts alleged in the complaint.[1] (Dkt. Nos. 9, 11,

---

[1] In connection with their motion to dismiss, County Defendants request that the Court
take judicial notice of three documents. (Dkt. No. 11-1 ("RJN").) Specifically, County
Defendants request that the Court take judicial notice of (1) the Findings and Order After Hearing,
filed on December 4, 2017, in the case of *Troy Timothy Carslake v. Stephanie Nayelli Carslake*,
filed in Alameda County Superior Court family law case number HF15794456 (*Id.* at ECF 3-17
("Family Court Order")); (2) Register of Actions for the case of *Carslake v. Carslake*, Alameda
County Superior Court case number HF15794456 (RJN at 18-37 ("Family Court Docket I")); and
(3) Register of Actions for the case of *Carslake v. Carslake*, Alameda County Superior Court case
number HF16829883 (RJN at ECF 38-42 ("Family Court Docket II")). (*Id.* at 3-4.) These state

1  12.) Judicial Defendants move to dismiss for lack of subject matter jurisdiction under Federal

2  Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6).  (Dkt. No. 10

3  ("Judicial MTD") at 1.)  County Defendants similarly move.  (Dkt. No. 11 ("County MTD") at 1.)

4  DCSS Defendants move to dismiss for lack of subject matter jurisdiction under Rule 12(b)(6), for

5  failure to a claim under Rule 12(c), and for failure to state a short and concise statement under

6  Rules 8(a) and (d).  (Dkt. No. 22 ("DCSS MTD") at 2.)

7  Having carefully considered the pleadings and the papers submitted, and for the reasons set

8  forth more fully below, the Court hereby **GRANTS** defendants' motions to dismiss with prejudice.

9  **I.      BACKGROUND**

10  Plaintiff is a party to an ongoing divorce and child custody case.  (*See* Compl. at 18.)  On

11  August 8, 2017, defendant Alameda Superior Court Judge Mark Kliszewski conducted a hearing

12  in plaintiff's case in family court, *Troy Timothy Carslake v. Stephanie Nayelli Carslake*, filed in

13  Alameda County Superior Court case number HF15794456.  (Family Court Order at ECF 4.)

14  Approximately four months later, on December 4, 2017, Judge Kliszewski issued Finding and

15  Order After Hearing in which he addressed custody issues and ordered plaintiff to pay Stephanie

16  Nayelli Carslake child support on a monthly basis in the amount of $418.00.  (*Id.* at ECF 8

17  (ordering plaintiff to pay child support in the amount of $418.00 on a monthly basis, one half on

18  the 1st of the month and one half on the 15th).)

19  Plaintiff includes in his complaint the following general factual allegations:  Defendants

20  "pursuant to Title IV-D, Section 458 of the Social Security Act, violated the United States

21  Constitution for billions in incentive money profits did knowingly, willfully, and with

22  premeditation violate [plaintiff's] civil and inherent rights under contract with a private for profit

23  IV-D franchise."[2]  (Compl. at 2.)  Defendants deprived plaintiff of his "interest pursuant to

25  court records have been filed with the State of California and are maintained on the court' s
26  website.  Accordingly, the Court **GRANTS** County Defendants' request.  *See Lee v. City of L.A.*,
   250 F.3d 668, 688-89 (9th Cir. 2001) (noting "a court may take judicial notice of matters of public
27  record" and documents whose "authenticity . . . is not contested" and upon which a plaintiff's
   complaint relies) (internal quotation marks omitted) (alterations in original).

28  [2] All quotations from plaintiff's complaint are included verbatim unless otherwise noted.

2

1   established IV-D activities, and due process was deprived because under 45 C.F.R. § 302.34 there

2   was no constitutional court hearing provided before [he] was deprived of [his] property and

3   rights." (*Id.* at 6.) Defendants, "and their agents, staff, and employee's premediated acts and

4   omissions violated due process because they knew well in advance that no law required them to

5   offer and sell IV-D services, and said services were not intended to benefit custodial parents or

6   children . . . and that IV-D services was intended to benefit the public treasury not [plaintiff]."

7   (*Id.*)

8          Plaintiff asserts that the Rooker-Feldman Doctrine as well as the "Domestic Relations" and

9   Younger Abstention Doctrines do not bar his lawsuit. (*Id.* at 3.) In support of that assertion,

10  plaintiff contends as follows: Defendants "did voluntarily enter into an IV-D contract with

11  [DCSS], the extension of the Office of Child Support Enforcement (OSCE) to provide IV-D

12  magistrate and probation services as an administrative franchise court, NOT a constitutional

13  court." (*Id.*) "Defendants are under contract with the federal government: 28 U.S.C. 3002(15)(A)

14  is a corporation and therefore the DCSS, Alameda County Superior Court, Judges, Clerk of the

15  Court, Sheriff and other government entities are corporate entities posing as Constitutional

16  branches of government." (*Id.*) Under 45 C.F.R. § 303.107 performance of duties, defendants

17  waived Eleventh Amendment immunity "as an independent branch of the government

18  constitutionally entrusted to protect the rights and liberties guaranteed by the Constitution and

19  laws of the United States and this state." (*Id.*) Defendants Kliszewski and Chatterjee "failed to

20  faithfully and impartially discharge and perform all the duties incumbent upon them under the

21  Constitution and laws of the United States." (*Id.*) Kliszewski and Chatterjee operated "as Clerks

22  of the OCSE masquerading as Judges" and so "cannot do anything judicial, and if they attempt to

23  do anything judicial, it is a nullity." (*Id.* at 3-4.)

24         Plaintiff also contends that defendants have waived any immunity provided by the

25  Eleventh Amendment. (*Id.* at 4-5.) In support thereof, plaintiff avers as follows: Defendants

26  performed their "obligation of IV-D contracts in an independent capacity" rather than as officers,

27  employees, or agents of the State of California or DCSS. (*Id.* at 4.) "The IV-D franchise is a

28  'partnership' against whom a § 1983 claim for money damages might be asserted . . . and a

3

1    'private business for profit' affecting or belonging to private individuals, as distinct from the

2    public generally, not official, not clothed with office." (*Id.*)  Therefore, defendants "voluntarily

3    entered to perform [a] contractual obligation outside of its constitutional creation amount[s] to the

4    automatic waiver of its Eleventh Amendment Immunity." (*Id.*)

5        Based upon these allegations, plaintiff now asserts thirteen causes of action against all

6    defendants, all of which plaintiff claims arise under Section 1983: (1) fraudulent inducement; (2)

7    fraud; (3) false advertisement; (4) forced and compelled association; (5) deprivation of rights

8    under color of law; (6) compelled disclosure and use of a social security number; (7) intentional

9    infliction of a bill of attainder, and pain and penalties; (8) First Amendment violations and

10   deprivations; (9) Fourth Amendment violations and deprivations; (10) Fifth Amendment

11   violations and deprivations; (11) denial of the right to counsel and the right to a trial by jury; (12)

12   Thirteenth Amendment deprivations and violations; and (13) Fourteenth Amendment deprivations

13   and violations.  (*Id*. at 8- 14.)

14       In support of each of these thirteen causes of action, plaintiff further alleges as follows:

15       In support of his first cause of action for fraudulent inducement, plaintiff alleges that

16   defendants compelled him "under Sec. 403 Grants (a)(5)(C)(iii)(III), to become enrolled in the IV-

17   D franchise and to be in compliance with the terms of a personal responsibility contract, in which

18   [plaintiff] unknowingly entered into with the [d]efendants, and [] a commitment to cooperate in

19   the payment of IV-D, and [] a commitment to participate in employment or related activities to

20   make regular payments to the [d]efendants, and [] a commitment to participate in services,

21   designed to compel [plaintiff] to obtain and retain employment, to increase earrings in order to

22   enhance their federal profits.  Under Sec 466(a) 42 U.S.C. § 666(a)(15)(A)(I) [d]efendants used

23   procedures to ensure that 'if [plaintiff] owed past-due support, [he] will work or have a plan for

24   payment." (*Id.* at 8.)

25       In support of his second cause of action for fraud, plaintiff alleges that defendants

26   "publicly advertise on their website that 'every child has the right to support from both parents'"

27   and "publicly advertise that DCSS's IV-D franchise 'benefits' children by enforcing parental

28   responsibility for their support." (*Id.* at 8-9.)  Defendants committed fraud because they "(1)

4

1  misrepresented the material facts that IV-D was for the best interest of children and custodial

2  parents, and it does create a federal right to service, and that needy families with children are the

3  intended beneficiaries of the statute[;] (2) . . . knew the misrepresentations were false, and that IV-

4  D was only created to benefit the state treasury not children; (3) [plaintiff] justifiably relied on the

5  misrepresentations; and (4) an actual injury and loss resulted from [plaintiff's] reliance in the

6  misrepresentations." (*Id.* at 9.)

7        In support of his third cause of action for false advertisement, plaintiff alleges that

8  defendants deprived him of his rights "in violation of 15 U.S.C. § 52 by knowingly and

9  intentionally disseminating false advertisements." (*Id.*) Defendants disseminated false

10  advertisements by the United States mail and a website "for the purpose of inducing, or which is

11  likely to induce, directly or indirectly the purchase of IV-D 'services[,]'" which was "an unfair

12  and deceptive act." (*Id.*)

13        In support of his fourth cause of action for forced and compelled association, plaintiff

14  alleges that "the IV-D franchise is in fact a private business for profit who offers and sells IV-D

15  services to 'customers'" and that he "was compelled to become a customer of the IV-D franchise

16  against [his] will." (*Id.* at 9-10.)

17        In support of his fifth cause of action for deprivation of rights under the color of law,

18  plaintiff alleges that defendants "deprived and violated [his] rights under Title 42, the Public

19  Health and Welfare Code which is comprised IV-D of the Social Security Act which is editorially

20  compiled and organized into the title, but Title 42 itself has never been enacted into positive law."

21  (*Id.* at 10.) "The distinction is constitutionally significant because a non-positive law title is

22  merely (presumed) evidence of law" and "positive law titled constitute legal evidence of the law in

23  all Federal and State courts." (*Id.*)

24        In support of his sixth cause of action for compelled disclosure and use of his SSN,

25  plaintiff alleges that defendants "employed Sec 466(a)(13) of the Social Security Act" to compel

26  "the disclosure of [his] SNN for the sole purpose of hunting and tracking [plaintiff] like an animal

27  and then forcing [him] under coercion to succeed to the status of non-custodial parent in order to

28  establish, modify, and enforce IV-D collections." (*Id.*) Defendants "in an act of collusion, and

5

1   under contractual obligations" compelled the disclosure of plaintiff's SSN "to obtain benefits from

2   certain U.S. agencies in violation of the laws of the United States and defendants shall be guilty of

3   a felony and upon conviction thereof shall be fined under title 18 or imprisoned for not more than

4   five years, or both." (*Id.* at 11.)

5          In support of his seventh cause of action for intentional infliction of a bill of attainder, and

6   pain and penalties, plaintiff alleges that defendants "acted under color of 42 U.S.C. § 666(a)(4)(A)

7   to place liens on [his] real and personal property to collect amounts allegedly owed, which arose

8   by operation of law, the manner of which involuntary financial servitude developed upon

9   [plaintiff], by the mere application of IV-D without the act or cooperation, of [plaintiff] for profit."

10  (*Id.*) "IV-D enforcement remedies target only the individual group through an intentional

11  infliction of a bill of attainder, or a bill of pain and penalties. IV-D is an act of the legislature that

12  declare non-custodial parents guilty of non-payment and punishing them without a trial by jury in

13  violation of the Sixth Amendment and Article I. Section 9, Paragraph 3." (*Id.*)

14         In support of his eight cause of action for First Amendment violations and deprivations,

15  plaintiff alleges that defendants "employed 45 C.F.R. §303.11(12) knowingly prohibiting and

16  abridging [plaintiff's] right to petition Government for redress of his grievances." (*Id.*)

17         In support of his ninth cause of action for Fourth Amendment violations and deprivations,

18  plaintiff alleges that defendants used his SSN "to employ IV-D High -Volume Automated Systems

19  to consistently violate [plaintiff's] right to privacy by using the number to track and hunt [him]

20  down, through Proactive Matching, Federal Parent Locator Service, State Parent Locator Service,

21  National Directory of New Hires, State Director of New Hires, New Hire Reporting, Multistate

22  Financial Institution Data Match, and the Uniform Interstate Family Support Act." (*Id.* at 12.)

23  Defendants "committed" the "tracking and hunting" of plaintiff in a "lust for profit pursuant to 42

24  U.S.C. §658(a) and (f) which resulted in the violations and [plaintiff] being unconstitutionally

25  subjected to Wage withholding; Liens on property; Offset of unemployment compensation

26  payments; Seizure and sale of personal or real property; Reporting to credit agencies to prevent the

27  underserved extension of credit; Seizure of State and Federal income tax refunds; Revocation of

28  various types of licenses (driver's, business, occupational, recreational); Attachment of lottery

United States District Court
Northern District of California

1    winnings and insurance settlements of debtor parents; Requirement that recipients of financial

2    assistance from the Small Business Administration, including direct loans and loan guarantees,

3    must certify that the recipient is not more than 60 days delinquent in the payment of child support;

4    Seizure of assets held by public or private retirement funds and financial institutions; Deprivation

5    of a debtor to a fresh start to discharge a debt completely, pay a percentage of the debt, or pay the

6    full amount of the debt over a longer period of time because debts for child support and alimony

7    are not dischargeable; State or Federal imprisonment, fines or both."[3]  (*Id.*)  Plaintiff's "SSN

8    which was issued to [him] to obtain benefits form certain U.S. agencies was deceptively used by

9    the [d]efendants to subject [plaintiff] to deprivations, for profit, with the intent to continually and

10   consistently deprive [plaintiff] of [his] right to be secure in [his] person, house, papers, and effects

11   against unreasonable searches and seizures, for their profit, gain, and not benefit [plaintiff]."  (*Id.*)

12          In support of his tenth cause of action for Fifth Amendment violations and deprivations,

13   plaintiff alleges that defendants "knowingly and intentionally deprived [plaintiff] of Due Process,

14   adequate notice that P.L. 106-187, and P.L. 102-521 imposes federal 'criminal penalties' that

15   target only the group of individuals non-custodial parents for the 'willful failure' to pay an alleged

16   past due IV-D obligation to the 42 U.S.C. § 654(3) that remains unpaid for longer than a year or is

17   greater than $5,000."  (*Id.* at 12-13.)  Defendants "knowingly did not afford due process

18   safeguards and intentionally did not provide adequate notice that the SNN issued to [plaintiff] to

19   obtain benefits from certain U.S. agencies would be under the List of Routine Uses, System # 60-

20   0058 Master Files of Social Security Number Holders, provided to the federal OCSE in order to

21   subject [plaintiff] to IV-D enforcement collections remedies from which [d]efendant profits in the

22   billions."  (*Id.* at 13.)  Defendants "and their employees did not inform [plaintiff] that default

23   paternity establishment through marriage would be admissible as evidence and would be used

24   against [him]."  (*Id.*)  Plaintiff "was also subject to the same IV-D enforcement remedies placing

25   [him] more than twice in jeopardy of [his] life, liberty and freedom, for [he] was compelled to be a

26   witness against [himself] under the requirement to provide the SSN account number."  (*Id.*)

27

28          [3] The Court notes that it is not clear whether each of these alleged deprivations happened
     to plaintiff.

7

1    In support of his eleventh cause of action for denial of the right to counsel and the right to

2    a trial by jury, plaintiff alleges that "[u]nder current IV-D contracts no attorney would accept [his]

3    case because it caused a conflict of interest under the current contract." (*Id.*)  Plaintiff "was

4    unable to obtain council due to a conflict of interest deeming a lawyer unreliable because of a

5    clash between his/her contractual obligations between the BAR and the OCSE." (*Id.*)  "The

6    American Bar Association approved "IV-D for Congress which created contractual bias in the

7    legal profession and the justice system, and [plaintiff] was subject to IV-D enforcement remedies

8    and was unable to obtain adequate legal counsel, and deprived of [his] right to a speedy and public

9    trial, by an impartial jury." (*Id.*)

10    In support of his twelfth cause of action for Thirteenth Amendment deprivations and

11    violations, plaintiff alleges that the remedies sought by defendants "constitute slavery and

12    involuntary servitude not inflicted as punishment for crime whereof [plaintiff] was duly

13    convicted[.]" (*Id.* at 14.)  Plaintiff "was compelled to labor against [his] will under P.L. 109-8

14    provisions related to establishing paternity, orders and to enforcing IV-D obligations stipulate that

15    a 'IV-D obligation' is paid first priority of his financial needs." (*Id.*)  Plaintiff "labor[ed] against

16    [his] will under coercion from which defendant's profit, for other than [plaintiff's] financial

17    needs." (*Id.*)

18    In support of his thirteenth cause of action for Fourteenth Amendment deprivations and

19    violations, plaintiff alleges that defendants "offer 45 C.F.R. §303.11 case closure criteria to a non-

20    IV-A recipient custodial parent (a woman) who requests 'closure of a case', but [plaintiff], a man

21    in this case was denied the same." (*Id.*)  "Defendants deprived [plaintiff] equal protection under

22    the law within its jurisdiction and unnecessary discrimination against various groups." (*Id.*)

23    Plaintiff "was denied the 'equal' protection of the laws when he requested case closure." (*Id.*)

24    "Under § 1983 a similarly situated person (a woman) was treated differently and the Defendant's

25    actions were motivated by an unlawful factor." (*Id.*)  "Equal protection was denied [plaintiff]

26    because the challenged conduct was clearly motivated by intent to discriminate." (*Id.*)

27    Plaintiff asks the Court to enter a judgment (i) terminating "the private for profit

28    contractual non-judicial IV-D Collections Case effectively," (ii) awarding actual, special

8

1  compensatory, and punitive damages in the amount of $1,000,000.00 against each defendant, (iii)

2  a refund of his "honestly acquire income" of $5,300.00 against each defendant, (iv) awarding "the

3  42 U.S.C. § 654(3) DCSS's 66 percent and the 45 C.F.R. §302.34's Alameda County's 34 percent

4  share of federal profit as well as penalties and 18 percent interest," (v) removing any and all

5  negative reporting to all credit bureaus affecting plaintiff's personal and professional credit

6  reputation, (vi) "dismiss, terminate and void ALL family court orders pertaining to Family Court

7  case #HF15794456 and Court case # HF16829883, (vii) awarding legal fees and cost in the

8  amount of $30,000.00 each against all defendants, and (ix) requiring defendants to write a letter of

9  apology to plaintiff.  (*Id.* at 17-18.)

10  **II.    LEGAL STANDARD**

11  **A. Motion to Dismiss Under Rule 12(b)(1)**

12  A district court must dismiss an action if it lacks jurisdiction over the subject matter of the

13  suit.  Fed. R. Civ. P. 12(b)(1).  "Subject matter jurisdiction matter jurisdiction can never be

14  forfeited or waived and federal courts have a continuing independent obligation to determine

15  whether subject matter jurisdiction exists."  *Lesson v. Transamerica Disability Income Plan*, 671

16  F.3d 969, 976 (9th Cir. 2012) (internal quotation marks and citation omitted).  The party asserting

17  federal subject matter jurisdiction bears the burden of establishing its existence.  *Kokkonen v.*

18  *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A jurisdictional challenge under Rule

19  12(b0(1) may be made either on the face of the pleadings or based upon extrinsic evidence.

20  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

21  **B. Motion to Dismiss Under Rule 12(b)(6)**

22  Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for

23  failure to state a claim upon which relief may be granted. Dismissal for failure to state a claim

24  under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of

25  sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d

26  1240, 1242 (9th Cir. 2011) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

27  1988)). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its

28

9

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). If the facts alleged do not support a reasonable inference of liability, stronger than a mere

possibility, the claim must be dismissed. *Id.* at 678–79. Mere "conclusory allegations of law and

unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355

F.3d 1179, 1183 (9th Cir. 2004). *Pro se* pleadings must satisfy the same standard. *See Brazil v.

U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995) (finding that courts must construe *pro se*

pleadings liberally, but "those pleadings nonetheless must meet some minimum threshold in

providing a defendant with notice of what it is that it allegedly did wrong.")

### III.   ANALYSIS

"The *Rooker-Feldman* doctrine forbids a losing party in state court from filing suit in

federal court complaining of an injury caused by a state court judgment, and seeking federal court

review and rejection of that judgment." *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013)

(citing *Skinner v. Switzer*, 562 U.S. 521, 531 (2011)); *see also Rooker v. Fidelity Trust Co.*, 263

U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In order to determine

whether the doctrine applies, a district court "first must determine whether the action contains a

forbidden de facto appeal of a state court decision." *Bell*, 709 F.3d at 897 (citing *Noel v. Hall*, 341

F.3d 1148, 1158 (9th Cir. 2003)). "A de facto appeal exists when 'a federal plaintiff asserts as a

legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court

judgment based on that decision.' In contrast, if 'a federal plaintiff asserts as a legal wrong an

allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.'"

*Id.* (citing *Noel*, 341 F.3d at 1164).

If a plaintiff seeks to bring a forbidden de facto appeal, that plaintiff "may not seek to

litigate an issue that is 'inextricably intertwined' with the state court judicial decision from which

the de facto appeal is brought." *Bell*, 709 F.3d 897. However, the "inextricably linked" language

10

1    "is not a test to determine whether a claim is a de facto appeal, but is rather a second and distinct

2    step in the *Rooker-Feldman* analysis.  Should the action *not* contain a forbidden de facto appeal,

3    the *Rooker-Feldman* inquiry ends."  *Id.* (emphasis in original)(internal citation omitted).

4         Here, plaintiff's claims center on his court-ordered child support obligations.  Each of

5    plaintiff's allegations relate to Judicial Defendants' determination obligating plaintiff to pay child

6    support and defendants' efforts to enforce that obligation.  (*See* Compl. at 8-14.)[4]  Moreover,

7    plaintiff requests that the Court, among other things, (i) terminate the Section IV-D child support

8    collection case against him; (ii) refund his wages garnished to fulfill his child support obligations;

9    (iii) remove all negative credit reports submitted in an effort to enforce plaintiff's child support

10   obligation; and (iv) "dismiss, terminate and void ALL family court orders pertaining to [plaintiff's

11   child support actions,] Family Court case #HF15794456 and Court case # HF16829883[.]"  (*Id.* at

12   17-18.)  In order to adjudicate plaintiff's each of claims, the Court would have to determine

13   whether the state court correctly entered judgment against plaintiff and ordered him to pay child

14   support.  In other words, plaintiff seeks to challenge, here in federal court, adverse rulings in state

15

16        [4] Alleging that defendants (1) fraudulently induced plaintiff to participate in a Section IV-
     D program designed to ensure that plaintiff made regular child-support payments; (2) engaged in
17   fraud by advertising that the Section IV-D program was "for the best interest of children and
     custodial parents"; (3) engaged in false advertisements designed to induce plaintiff's participation
18   in the Section IV-D program; (4) compelled plaintiff to associate  with the Section IV-D program
     against his will; (5) deprived plaintiff of his rights under "Tile 42, the Public Health and Welfare
19   Code, which is comprised of IV-D of the Social Security Act"; (6) compelled plaintiff to disclose
     his SSN in order to "hunt[] and track[]" him and then forced him "to succeed to the status of non-
20   custodial parent in order to establish, modify, and enforce IV-D collections"; (7) placing a lien on
     his property to collect on amount owed which "arose . . . by the mere application of IV-D"; (8)
21   "employed 45 C.F.R. § 303.11," which governs case closure criteria for IV-D agencies to
     "prohibit[] and abridge[]" plaintiff's First Amendment right to petition the government for redress
22   of his grievances; (9) used plaintiff's SNN to "track and hunt [him] down" in order to enforce his
     child support obligation through a number of methods, including wage garnishment, property
23   liens, unemployment compensation offsets, seizure and sale of property, credit agency reporting to
     prevent extensions of credit, revocation of various types of licenses, and other methods; (10) failed
24   to provide adequate notice that certain laws governing enforcement of IV-D child support
     obligations impose criminal penalties that "target" non-custodial parents for the willful failure to
25   pay certain past due IV-D obligations; (11) preventing plaintiff from obtaining an attorney due to
     the "conflicts of interest" created by "IV-D contracts" and subjected him to IV-D enforcement
26   procedures depriving him of his "right to speedy and public trial, by an impartial jury"; (12) forced
     plaintiff to "labor against [his] will under coercion" by operation of "provisions related to
27   establishing paternity, orders and to enforcing IV-D obligations stipulate that a 'IV-D obligation'
     is paid first priority of his financial needs"; and (13) offered case closure criteria to a plaintiff's
28   wife, "a non-IV-A recipient custodial parent (a woman)" but denied plaintiff the same, motivated
     by an intent to discriminate and denying plaintiff equal protection.

11

court.  This is precisely the type of case the *Rooker-Feldman* doctrine bars.  *See Moor v. Cnty. of Butte*, 547 Fed.Appx. 826, 829 (9th Cir. 2013) (affirming dismissal on *Rooker-Feldman* grounds a federal suit arising out of state court divorce and child custody proceedings); *Gomez v. San Diego Family Ct.*, 388 Fed. Appx. 685 (9th Cir. 2010) (affirming dismissal on *Rooker-Feldman* grounds of action challenging state court custody decision); *Sareen v. Sareen*, 356 Fed.Appx. 977 (9th Cir. 2009) (affirming dismissal on *Rooker-Feldman* grounds of an action alleging constitutional violations in plaintiff's child custody proceedings).  Accordingly, the Court finds that it lacks jurisdiction over the subject matter of plaintiff's lawsuit and thus, dismissal is appropriate.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants' motions to dismiss with prejudice.  The Clerk shall close the file.

This Order terminates the case, as well as Docket Numbers 9, 11, and 22.

**IT IS SO ORDERED.**

Dated: May 16, 2019

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**